UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VINCENT F. DEPASQUALE,

                    Plaintiff,                   <u>MEMORANDUM AND ORDER</u>
                                                12-CV-2564 (RRM)(MDG)

- against -

DANIEL DEPASQUALE, and
PENSION DESIGN SERVICES, INC.,

                    Defendants.
------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Vincent DePasquale alleges that Daniel DePasquale ("Daniel") breached an

agreement with a third-party, and that Daniel, as a trustee of Debro Manufacturing Corporation's

pension plan, and Pension Design Services, Inc. ("PDS") violated certain provisions of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461,

thereby causing him harm.  (*See* Am. Compl. (Doc. No. 3).) Before the Court are defendants'

fully-briefed motions to dismiss  Federal Rules of Civil Procedure 12(b)(5), 12(b)(6) and

12(b)(7) (Doc. Nos. 16 -18).  For the reasons that follow, the Court grants defendants' motions,

and dismisses the amended complaint.

## BACKGROUND

      The following facts are taken from plaintiff's amended complaint and considered to be

true for purposes of these motions to dismiss.

      Debro Manufacturing Corporation ("Debro"), a manufacturer of outdoor lawn furniture

and beach chairs, was incorporated in New York in 1976 by two brothers, Daniel and Joseph

DePasquale ("Joseph").  (Doc. No. 3 ¶ 6.)  On September 1, 1989, Debro established a defined

pension plan that was funded through a trust with Joseph and Daniel designated as trustees.  (*Id.*

¶ 12.)  The pension plan administrator was designated as "the Employer" and listed its address as "37-01 31st Street, Long Island City, NY 11101, the address of Debro."  (*Id.*)  At some point in 1989, a Summary Plan Description ("SPD") of Debro's pension plan was created.  (*Id.* ¶ 15.)  A Debro employee became eligible to participate in the pension plan after two years of service, which was defined as 1000 hours of service within a twelve-month period.  (*Id.* ¶ 13.)

Plaintiff, Joseph's younger son, began working at Debro part-time in 1995, and then full-time in 1999.  (*Id.* ¶ 9.)  Plaintiff alleges that he became eligible to participate in Debro's pension plan in 2001.  (*Id.* ¶ 14.)

On August 7, 2003, Joseph entered into a stock purchase agreement with Daniel whereby Joseph purchased all of Daniel's interests in Debro and became owner of 100% of Debro's authorized and issued shares of stock ("August 7, 2003 Agreement of Sale").  (*Id.* ¶ 6.)  Joseph also purchased, in the same purchase agreement, Daniel's interests in Fiesta Realty, Inc., which owned the land under Debro's manufacturing plant, and Summit Enterprises, Inc., which owned other property utilized by Debro.  (*Id.*)  At closing, Daniel resigned as a director and officer of Debro, Fiesta Realty, Inc., and Summit Enterprises, Inc.  (*Id.* ¶ 7.)  The purported reason for this agreement was to allow Joseph's "sons [to] easily take over the business without having to resolve any claims" from Daniel, his heirs, or his side of the family.  (*Id.* ¶ 8.)  Also on August 7, 2003, Joseph, as president of Debro, entered into a seven-year employment agreement with Daniel whereby Daniel would be paid $28,571.43 per year to "act as an Executive within Debro" on a part-time basis.  (*Id.* ¶ 11.)

Joseph died in March 2004 and his wife, Lillian DePasquale, inherited Joseph's interests in Debro, becoming the sole owner of Debro.  (*Id.* ¶¶ 10, 24.)  In "early 2005" Daniel informed plaintiff that Debro "had to go out of business" and "despite [plaintiff]'s strong entreaties and

requests and protestations, [ ] refused to give [plaintiff] access to the books and records of Debro." (*Id*. ¶ 17.)

Then, "[i]n early 2006" Daniel "handed [plaintiff] a check in the amount of about $20,000.00," informing plaintiff that "Debro had a pension plan and that this pension plan was underfunded requiring Dan[iel] to terminate it and distribute its assets" and that the amount of the check represented plaintiff's share of the pension plan. (*Id*. ¶ 18.) Plaintiff immediately asked Daniel "to explain how this $20,000.00 had been calculated," "for other information about this pension plan," and the "latest financial statements for the plan." (*Id*. ¶ 19.) Daniel did not answer those questions and instead directed plaintiff to speak to his Aunt Mary, a non-executive employee of Debro, who "professed to have no information about this pension plan" when asked. (*Id*. ¶¶ 19–20.) Plaintiff also alleges that he "received no further information about this pension plan despite repeatedly asking Dan[iel] for further information." (*Id*. ¶ 21.) In contrast to plaintiff's share of the pension plan, Debro's pension plan paid out $812,612.00 to Daniel, $197,612.00 to Daniel's wife, and $222,912.00 to Lillian DePasquale. (*Id*. ¶¶ 23–24.)

Subsequently, Debro ceased doing business in May 2006, and sometime thereafter Daniel liquidated Debro's property and equipment "for a fraction of its true market value" and "formally dissolved the corporation." (*Id*. ¶¶ 22–25.)

## STANDARD OF REVIEW

### I.     Motion to Dismiss For Insufficient Process

"[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp*., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "Conclusory statements that a defendant was properly served are insufficient to overcome a

defendant's sworn affidavit that he was never served with process." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010).

## II.    Motion To Dismiss For Failure To State A Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a Rule 12(b)(6) motion, the court must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). Further, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996). However, the court may also consider "matters of which judicial notice may be taken" and documents of which plaintiff "had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949

(quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

## III.   Motion To Dismiss For Failure To Join A Party

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action for the failure to join parties necessary to the action as defined under Rule 19. The Second Circuit has set forth a "two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, the court must determine whether a party is necessary under Rule 19(a), *id*., which sets forth that a party must be joined if:

> (A) in the person's absence complete relief cannot be accorded among existing parties, or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Second, if a necessary party cannot be joined, "it must then be determined whether the party's absence warrants dismissal pursuant to Rule 19(b)" because the party is also indispensable. *Kearney*, 212 F.3d at 725. Rule 19(b) provides that:

> If a person who is required to be joined [under Rule 19(a)] cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

## DISCUSSION

In the amended complaint, plaintiff asserts six claims against Daniel individually, one claim against PDS individually, and one claim against both Daniel and PDS. (Doc. No. 3) Specifically, plaintiff asserts that Daniel: 1) breached his fiduciary duty by failing to provide plaintiff with a copy of the SPD; 2) breached his fiduciary duty by failing to provide plaintiff with copies of the Notice of Intent to Terminate ("NOIT"), Notice of Plan Benefits ("NOPB"), and Notice of Annuity Contract ("NOAC"); 3) committed fraud by failing to provide these documents; 4) breached his fiduciary duties and committed fraud by failing to properly account for Debro's pension plan assets; 5) violated 29 U.S.C. § 1132(a)(1)(B) by failing to give plaintiff the full amount of pension benefits owed; and 6) breached an employment agreement. (*Id.* ¶¶ 26–43, 59–82.) Plaintiff further alleges that PDS made a false statement in Schedule EA-S by certifying that Debro's defined benefit pension plan had complied with one of ERISA's three minimum accrual standards when it had not. (*Id.* ¶¶ 44–54.) Finally, plaintiff claims that both Daniel and PDS improperly segregated pension plan assets. (*Id.* ¶¶ 55–59.)

Both defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending, first, that the action is barred by ERISA's statute of limitations, and alternatively, plaintiff failed to state a claim upon which relief may be granted.

(*See* Doc. Nos. 15, 16.)  Daniel additionally moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, and pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join Lillian DePasquale and the estate of Joseph DePasquale.  (Doc. No. 16-1 at 17–18.)  The Court begins its analysis with the question of service of process.  *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 220 (2d Cir. 1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant – a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

## I.  Insufficient Service of Process

Daniel argues that plaintiff's proof of service is defective because the affidavit of service "avers that service was made directly on Dan[iel] . . . [when in fact] service was actually made on Margaret," Daniel's wife.  (Doc. No. 16-1 at 20.)  Notably, Daniel concedes that he was properly served pursuant to Federal Rule of Civil Procedure 4(e)(2)(B) by "service on a person of suitable age and discretion residing with the Defendant."  (*Id.*)  However, Daniel complains that the affidavit of service is inaccurate in stating that service was made upon Daniel himself pursuant to Federal Rule of Civil Procedure 4(e)(2)(A).  (*Id.*)  Daniel thus argues that plaintiff "should have, but has not, sought permission of this Court to amend the proof of service" and that this is "another example of Plaintiff's cavalier attitude to compliance with the requirements of federal practice."  (*Id*. at 21.)

Plaintiff responds by having his counsel vouch for the "validity/integrity" of the "service of papers" and asserting that "the affidavit of service for Dan[iel] looks like every other affidavit of service that [plaintiff's counsel] has received" from the particular service processing company for the past ten years.  (Doc. No. 17 at 4–5.)  Further, plaintiff contends that Daniel's argument "is not properly made in support of a motion to dismiss under Fed.R.Civ.Pro. 12(b)(2) absent the

holding of, what is referred to in state court as, a traverse hearing which finds in Dan[iel]'s favor."[1]  (*Id*. at 5.)

Notwithstanding plaintiff's flawed arguments, a defective affidavit does not constitute insufficient service of process.  Fed. R. Civ. P. 4(l)(3) ("Failure to prove service does not affect the validity of service.  The court may permit proof of service to be amended.").  Because Daniel acknowledges that he was properly served pursuant to Federal Rule of Civil Procedure 4(e)(2)(B), his motion for insufficient service of process is denied.  However, should this litigation continue, plaintiff may seek leave to amend the proof of service to the extent that it is incorrect.

## II.    Failure To State A Claim

Before discussing the merits of defendant's motions under Federal Rule of Civil Procedure 12(b)(6), the Court must preliminarily address the issues of affidavits and documents external to the amended complaint that were attached to the motion papers, and ERISA preemption of common law fraud claims.

### A.  Affidavits And Documents External To The Amended Complaint

It is well-established that in deciding a Rule 12(b)(6) motion, the court must limit itself to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference, but that a court may also consider documents which plaintiff had knowledge of and relied on in bringing suit.  *See Newman & Schwartz*, 102 F.3d at 662; *Brass*, 987 F.2d at 142.  Because the purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits," a court generally "does not look beyond the complaint

---

[1] "[T]echnically Rule 12(b)(5) is the proper provision to challenge the mode of delivery or the lack of delivery of the summons and complaint."  *Ebanks v. Ebanks*, 07-cv-314, 2007 WL 2591196, at *3 (S.D.N.Y. Sept. 6, 2007) (internal quotation marks and citations omitted).

and attached documents in deciding a motion to dismiss." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations omitted). Nonetheless, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

PDS has properly submitted Schedule EA-S in support of its motion to dismiss arguing that plaintiff's claims are barred by ERISA's statute of limitations. (Doc. No. 15-2.) Because this document, as plaintiff concedes (Doc. No. 17 at 2–3), was incorporated by reference in the amended complaint (*see* Doc. No. 3 ¶¶ 44–54), the Court will consider it in deciding these motions to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002).

In contrast, the other parties have inundated the Court with supplemental affidavits and documents. Defendant Daniel in support of his motion to dismiss attached: a) the affidavit of his attorney averring to facts not contained within the amended complaint; b) eighteen documents, some of which have additional documents attached to them; c) Daniel DePasquale's affidavit; and d) Margaret DePasquale's affidavit. (*See* Doc. No. 16.) Plaintiff in support of his omnibus opposition to the motions to dismiss attached: a) the affirmation of his lawyer, b) two documents not referenced in the amended complaint,[2] c) the affidavit of plaintiff Vincent DePasquale disputing the authenticity of his signature on one of the eighteen documents Daniel submitted in support of his motion, and d) the disputed document. (*See* Doc. No. 17.) Moreover, in his reply in support of his motion to dismiss, Daniel attaches another affidavit from

---

[2] Plaintiff argues that one of these documents, Form 501, attached as Exhibit A to his attorney's affidavit, was incorporated by reference in the amended complaint where he alleges that he "did not learn of the SPD's existence until 2011 when he received various documents from defendant" PDS. (Doc. No. 3 ¶ 31.) This passing reference to "various documents" does not incorporate Form 501 into the amended complaint and this extraneous document will not be considered for purposes of these motions to dismiss. *See U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 451–52 (E.D.N.Y. 2007) (noting that documents are not incorporated by reference merely by being in plaintiff's possession and that extraneous documents are not incorporated even where the "amended complaint discussed the[] documents and presented short quotations from them" (internal citations and quotations omitted)).

his counsel attesting to facts not contained within the amended complaint and attaches an excerpt from plaintiff's deposition in another case. (*See* Doc. No. 19.)

Daniel contends that the documents annexed to his motion should be considered by this Court because they "were, or should have been, known to the Plaintiff, and set the underlying table on which the Plaintiff's Amended Complaint rests." (Doc. No. 19-1 at 8.) However, the Court declines to convert Daniel's motion into a Rule 56 summary judgment motion. As such, the Court, with one exception, will not consider, for purposes of these motions to dismiss, the documents and affidavits attached to Daniel's motion to dismiss, the document and affidavit attached to Daniel's reply in support of his motion, and the documents and affidavits attached to plaintiff's omnibus opposition to the motions to dismiss. The Court finds, and plaintiff concedes, that the August 7, 2003 Agreement of Sale, attached to Daniel's motion to dismiss is incorporated by reference in the amended complaint and thus it will properly be considered on the motion to dismiss.[3] (Doc. No. 3 ¶ 11; Doc. No. 16-2, Ex. A.)

### B. ERISA Preemption Of Common Law Fraud Claims

"ERISA provides that it 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (*quoting* 29 U.S.C. § 1144(a)); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (stating that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"). While "the express

---

[3] Plaintiff concedes that the Court may consider two documents attached to Daniel's motion to dismiss, the August 7, 2003 Agreement of Sale and the unsigned employment contract without converting Daniel's motion into a Rule 56 summary judgment motion. (Doc. No. 17 at 3.) For purposes of the motions to dismiss pursuant to Rule 12(b)(6), the Court will consider the August 7, 2003 Agreement of Sale, but will not consider the unexecuted employment contract because it is not referenced in the amended complaint. The employment contract referenced in the amended complaint has a seven-year term from "June 2003 through June 2010" (Doc. No. 3 ¶¶ 11, 73) whereas the unexecuted employment contract has a term beginning in June 2001. (Doc. No. 16-2, Ex. C.)

preemption provisions of ERISA are deliberately expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987), ERISA's preemption provision does not foreclose every state action that has some effect on an ERISA plan. *See, e.g.*, *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) ("The plaintiffs' common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans.").

It is unclear whether plaintiff intended to allege any common law fraud claims. Plaintiff expressly stated that he "does not believe he asserts a common law fraud claim against PDS in his Amended Complaint." (Pl. Ltr. Opp. Leave for Motion to Dismiss, dated August 23, 2013 (Doc. No. 12) at 1.) However, plaintiff argues that he "cognizably and plausibly pleads fraud in his Third, Fourth, Fifth, and Sixth Counts," which includes claims directed at both PDS and Daniel, and that because he "viably alleges that a fiduciary perpetrated a fraud on th[e] plaintiff[,] . . . that plaintiff simultaneously alleges that the fiduciary breached his/her/its fiduciary duty to that plaintiff." (Doc. No. 17 at 13–17.)

To the extent plaintiff alleges common law fraud, those claims are preempted by ERISA. It is evident from the face of plaintiff's amended complaint that claims three through five – that Daniel defrauded plaintiff by "failing to provide the SPD, NOIT, NOPB, and Notice of Annuity Contract" (Third Claim); that PDS "knowingly and willfully made at least one false statement" in Schedule EA-S by certifying that Debro's defined benefit pension plan had complied with one of ERISA's three minimum accrual standards when it had not (Fourth Claim); and that Daniel and PDS "defrauded" plaintiff by segregating plan assets in violation of 29 U.S.C. § 1054(b) (Fifth Claim) – merely duplicate plaintiff's causes of action under ERISA and are therefore preempted. (Doc. No. 3 ¶¶ 41–59.) Likewise plaintiff's sixth claim that Daniel "defrauded

Debro" by failing to "deposit unused Plan funds back into Debro" and thereby "breached his fiduciary duties to [plaintiff]" is preempted by ERISA.[4]  (*Id.* ¶¶ 59–66.)

Accordingly, plaintiff's common law fraud claims "in his Third, Fourth, Fifth, and Sixth Counts" are preempted by ERISA.  (Doc. No. 17 at 13.)  The Court now turns to plaintiff's claims under ERISA.

### C.  Failure To Plausibly State A Claim For Relief Under ERISA

Plaintiff's ERISA claims arise from allegations of breaches of fiduciary duties, improper pension plan accrual and segregation pursuant to 29 U.S.C. § 1054(b), and failure to payout the full pension amount owed to plaintiff pursuant to 29 U.S.C. § 1132(a)(1)(B).

For ERISA claims that involve fiduciary responsibilities, the relevant statute of limitations is statutorily prescribed and the claims must be brought within the *earlier* of (1) six years from the date of the "last action which constituted a part of the breach or violation, or [ ] in the case of an omission the latest date on which the fiduciary could have cured the breach or violation," or (2) three years after "the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113.  There is an exception to this statute of limitations in the case of fraud or concealment, where an ERISA claim will be timely unless commenced "later than six years after the date of discovery of such breach or violation."  *Id.*; *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir 2001) ("[T]he 'fraud or concealment' provision does not 'toll' the otherwise applicable six-or-three-year statute of limitations . . . rather, it prescribes a separate statute of limitations of six years from the date of discovery.").  The Second Circuit

---

[4] Even if this claim were not preempted by ERISA, it is nonsensical.  Plaintiff alleges that, as a beneficiary of his mother's will, he "suffered a loss" when Daniel "defrauded Debro" by failing to "deposit unused Plan funds back into Debro" because his mother was the sole owner of Debro at the time.  (Doc. No. 3 ¶¶ 60–66.)  Plaintiff's mother was alive in 2006 when Debro's pension plan assets were distributed, indeed she received $222,912.00.  (*Id.* ¶ 24.)  As such, plaintiff as a potential beneficiary does not have any legal right or standing to bring a claim of fraud against Debro that may or may not have accrued to his mother as the sole owner of Debro.  *See Blackmon v. Estate of Battcock*, 78 N.Y.2d 735, 739 (1991) ("Beneficiaries enjoy only expectancy interests and not vested legal rights.").

has held that the ERISA statute of limitations provisions require "strict adherence." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) (discussing reasons for a statute of limitations in an ERISA case).[5]

Because ERISA does not provide a statute of limitations for plaintiff's claims that do not involve fiduciary responsibilities, this Court must adopt the most closely analogous New York State statute of limitations for those claims. *See Miles v. N.Y. State Teamsters Conf. Pension and Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Courts in this circuit have held that the six-year statute of limitations period under New York Civil Practice Law and Rules ("C.P.L.R.") § 213 applies to claims brought under both 29 U.S.C. § 1054 and § 1132. *See, e.g.*, *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (applying C.P.L.R. § 213 to claims brought under 29 U.S.C. § 1132); *Osberg v. Foot Locker, Inc.*, 656 F. Supp. 2d 361, 370 (S.D.N.Y. 2009) (applying C.P.L.R. § 213 to claims brought under 29 U.S.C. § 1054). "Under federal common law, courts generally apply the 'discovery rule' to determine when an ERISA cause of action accrues, looking to when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

Therefore, the Court will examine plaintiff's breach of fiduciary duty claims according to ERISA's statute of limitations and plaintiff's remaining claims according to the statute of limitations under C.P.L.R. § 213. Where a claim overcomes the statute of limitations, the Court will examine whether plaintiff has plausibly stated a claim for relief.

---

[5] Plaintiff altogether misstates and misapplies the ERISA statute of limitations. (Doc. No. 17 at 6–12.) Although plaintiff quotes the correct provision, 29 U.S.C. § 1113, and includes the statutory language that "[n]o action may be commenced . . . after the earlier of" various limitation periods, plaintiff inexplicably ignores the earliest limitation period and argues that his claims are timely on various alternative limitations periods. (*Id.*)

### 1. Claims Against PDS Under ERISA

Plaintiff alleges that PDS breached its fiduciary duty by making "at least one false statement" in Schedule EA-S in stating that Debro's pension plan had complied with one of ERISA's three minimum accrual standards when it had not, and by improperly segregating pension plan assets. (Doc. No. 3 ¶¶ 44–59.) Additionally, among his allegations for breach of fiduciary duty, plaintiff also accuses PDS of violating 29 U.S.C. § 1054(b) without any factual basis or support. For example, although plaintiff states in conclusory fashion that PDS violated 29 U.S.C. §1054(b) in relation to Schedule EA-S, plaintiff goes on to allege that it was not PDS but "the Plan [that] violate[d] 29 U.S.C. §1054(b)" and makes no reference to PDS's role in the plan's failure to "comply with any of the[] three minimum accrual standards" under ERISA. (Doc. No. 3 ¶¶ 49–54.) Similarly, in his second claim against PDS, plaintiff merely states that it "violated 29 U.S.C. §1054(b) . . . [b]y segregating the[] Plan assets," but then alleges that it was Daniel, not PDS, who segregated "certain assets under the Plan for the Plan's older participants" without any mention of PDS's role or function in segregating Debro's pension plan assets. (Doc. No. 3 ¶¶ 56–58.) Because plaintiff has not plausibly stated any cause of action under 29 U.S.C. § 1054(b) against PDS separate and apart from his allegations for breach of fiduciary duty, the Court will consider plaintiff's allegations, like PDS does, only as claims for breach of fiduciary duty. (*See* Doc. No. 15-1 at 6–7.)

PDS argues that ERISA's six-year statute of limitations bars plaintiff's claims for a breach of fiduciary duty with respect to Schedule EA-S and the segregation of Debro's pension plan assets. (Doc. No. 15-1 at 5–9.) Plaintiff inexplicably does not make any argument concerning whether his causes of action against PDS accrued within the six-year statute of limitations; instead, plaintiff argues that his action against PDS is timely because plaintiff "obtained <u>actual knowledge</u> that Steven Alin of PDS certified . . . Schedule EA-S" in 2011,

plaintiff has until 2014 to file his lawsuit. (Doc. No. 17 at 8–9 (emphasis in original).)

Additionally, plaintiff expressly disclaims any reliance on the fraud or concealment exception

and concedes that he did not allege facts "to show PDS's fraud or concealment here." (*Id*. at 12.)

Thus, as the earliest of the limitation periods, the six-year statute of limitations serves to bar

plaintiff's claims against PDS.

Plaintiff's first claim against PDS is for breach of fiduciary duty involving misstatements

in Schedule EA-S. The instant lawsuit was commenced on May 21, 2012. (Doc. No. 1.) Under

the six-year statute of limitations, any cause of action for breach of fiduciary duty under ERISA

must have accrued no earlier than May 21, 2006. Schedule EA-S was signed on November 18,

2005. (Schedule EA-S, dated Nov. 18, 2005 (Doc. No. 15-2, Ex. A).) Because plaintiff's action

was not commenced until more than six-years after PDS's execution of Schedule EA-S – which

is earlier than plaintiff's argument for actual knowledge under the three-year limitation period,

and because plaintiff does not allege fraud or concealment – this claim is barred by 29 U.S.C.

§ 1113(1)(A).

Likewise, plaintiff's second claim against PDS for breach of fiduciary duty concerning

the segregation of Debro's pension plan assets is barred by ERISA's statute of limitations.

Although, plaintiff does not allege precisely when Debro's pension plan's assets were

segregated, it is axiomatic that the segregation must have occurred prior to the termination of the

pension plan. It appears from the face of Schedule EA-S, which is entitled "Standard

Termination Certification Sufficiency," that termination of Debro's pension plan was underway

by November 18, 2005. (Doc. No. 15-2, Ex. A.) At the latest, however, the pension plan was

terminated in "early 2006," more than six-years prior to the date plaintiff initiated this action.

(Doc. No. 3 ¶ 18.) Plaintiff does not argue to the contrary, nor does plaintiff allege any facts to

plausibly suggest that Debro's pension plan was segregated within the six-year limitation period, which is earlier than plaintiff's argument for actual knowledge under the three-year limitation period. Moreover, plaintiff does not allege fraud or concealment with respect to PDS concerning the segregation of Debro's pension plan. Thus, plaintiff's second claim against PDS is also barred by 29 U.S.C. § 1113(1)(A).

Accordingly, plaintiff's claims against PDS, which are barred by ERISA's statute of limitations, are dismissed for failure to state a claim upon which relief may be granted.[6]

### 2. Claims Against Daniel Under ERISA

Plaintiff alleges that Daniel breached his fiduciary duties by failing to provide copies of the SPD, NOIT, NOPB, and NOAC, by improperly segregating pension plan assets, and by failing to account properly for pension plan assets. Additionally, plaintiff claims that Daniel violated 29 U.S.C. § 1054(b) for improperly segregating pension fund assets, and violated 29 U.S.C. § 1132(a)(1)(B) in failing to provide plaintiff with the full amount of pension benefits owed. The Court will first examine plaintiff's breach of fiduciary duty claims under 29 U.S.C. § 1113 and then consider plaintiff's remaining claims under C.P.L.R. § 213.

### i. Breach of Fiduciary Duty – Statute Of Limitations 29 U.S.C. § 1113

Daniel argues that ERISA's six-year statute of limitations bars plaintiff's claims for breach of fiduciary duty and that plaintiff has not demonstrated that the fraud or concealment

---

[6] Apparently conceding that PDS may not actually be a fiduciary, plaintiff, in his opposition papers, attempts to raise a new claim that PDS is "a non-fiduciary who must be held liable for knowingly participating in a fiduciary's breach of the ERISA statue [*sic*]" because "PDS knowingly and willfully aided and abetted Dan[iel] in breaching his fiduciary duties by ignoring or permitting or implementing certain forbidden acts, such as backloading or segregating pension assets." (Doc. No. 17 at 19–22.) "[P]laintiff[] cannot use their opposition to the motion to dismiss to raise new claims or arguments, and thus the Court does not address the new argument[] made in the plaintiff[']s] memorandum." *Kiryas Joel Alliance v. Village of Kiryas Joel*, 11-cv-3982, 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011).

Furthermore, plaintiff stated at the pre-motion conference – after defendants sought to provide plaintiff with documents and knowing that PDS would move to dismiss based on ERISA's statute of limitations – that he did not want to exchange any documents and would not seek to amend his amended complaint prior to the motions to dismiss. (Tr. of Pre-Motion Conf. (Doc. No. 20) at 41–42.)

exception applies. (Doc. No. 16-1 at 6–11.) Plaintiff argues, based on an incorrect reading of 29 U.S.C. § 1113, that the last date that Daniel could have cured any breach was within six years of this action; that plaintiff obtained actual knowledge that Debro's plan was voluntarily terminated in 2011 and thus has "until 2014 to commence an action" against Daniel; and that because plaintiff did not receive certain documents or learn that the plan was voluntarily terminated until 2011, that Daniel's omissions constitute "fraud/concealment" and the exception to ERISA's statute of limitations applies and thus plaintiff has "until 2017 to sue Dan[iel]." (Doc. No. 17 at 6–12.)

The Court will first address the six-year statute of limitations, as the earliest of the limitations periods, before turning to the fraud or concealment exception.

### 1. *ERISA Six-Year Statute of Limitations*

To the extent that the fraud or concealment exception does not apply, plaintiff's breach of fiduciary duty claims against Daniel for improperly segregating pension plan assets and failing to properly account for pension plan assets, like plaintiff's claims against PDS, must be brought within six-years of "the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A). In contrast, plaintiff's breach of fiduciary duty claims against Daniel for failure to provide certain pension plan documents are omissions, which must be brought within six-years of "latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1)(B).

Plaintiff alleges that in "early 2006" he learned that Debro had a pension plan, that it had been terminated due to underfunding, and that the $20,000 check he received represented his "share of the terminated Plan." (Doc. No. 3 ¶ 18.) As such, the latest date that Daniel could have cured any breach for failing to provide plaintiff with the SPD, NOIT, NOPB, and NOAC, documents related to Debro's pension plan, necessarily accrued prior to or at the termination of

the plan and the distribution of its assets.[7]  Similarly, the last action which may have constituted

part of any breach of Daniel's fiduciary duties for improperly segregating Debro's pension plan

assets and failing to account for Debro's pension plan assets also necessarily accrued at or before

the distribution of Debro's pension plan assets in "early 2006."  *See Carey v. Int'l Bhd. of Elec.*

*Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999) (holding generally that "a cause

of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be

known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for

benefits").  Thus, all of plaintiff's claims against Daniel for breach of fiduciary duty accrued

more than six years prior to the filing of this action, which as the earliest limitation period under

29 U.S.C. § 1113, would bar plaintiff's claims if the fraud or concealment exception does not

apply.

### 2.  *Fraud or Concealment Exception*

Under this exception, an ERISA claim must be brought within six years after the date

"plaintiff discovers, or should with reasonable diligence have discovered, the breach" of

fiduciary duty.  *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012).  To successfully plead the fraud

or concealment exception, the plaintiff must allege that a fiduciary either "breached its duty by

making a knowing misrepresentation or omission of a material fact to induce an

employee/beneficiary to act to his detriment; or [ ] engaged in acts to hinder the discovery of a

breach of fiduciary duty."  *Id*. (citing *Caputo*, 267 F.3d at 193).  "Moreover, these allegations

must be stated 'with particularity,' Fed. R. Civ. P. 9(b), requiring a plaintiff to 'specify, the time,

---

[7] Plaintiff argues that the last date which Daniel could have cured was May 21, 2006, based on the date that Form 501, the Post-Distribution Certificate, was signed.  (Doc. No. 17 at 7–8.)  As discussed *supra*, this document was not incorporated by reference in the amended complaint and will not be considered.  Nevertheless, even if the Court were to consider this document, the result would not change; once the pension plan was terminated and its assets distributed, providing plaintiff with the pension plan documents would not have cured Daniel's alleged breach of fiduciary duty.

place, speaker, and content of the alleged misrepresentations,' as well as 'how the misrepresentations were fraudulent' and 'those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Id.* (citing *Caputo*, 267 F.3d at 193).

In arguing that this exception applies, plaintiff relies solely on the concealment prong. Plaintiff contends that the amended complaint alleges that Daniel engaged in acts to hinder the discovery of a breach of fiduciary duty by "conceal[ing] from [plaintiff] the following information/documents: (a) that he was voluntarily terminating the pension plan, (b) the SPD, (c) the pension plan itself, (d) the NOIT, (e) the NOPB, (f) the Notice of Annuity Contract, and (g) that Dan[iel]'s ostensible share of pension benefits dwarfed that of all the other participants." (Doc. No. 17 at 10.) The court will examine plaintiff's arguments regarding an inaccurate statement (c) and the concealed documents (b, d, e, f), before turning to the concealment of the voluntary termination (a) and Daniel's share of the pension plan (g).

The amended complaint alleges that in "early 2006" Daniel informed plaintiff of the existence of the pension plan, and its termination. (Doc. No. 3 ¶ 18.) Thus, the concealment exception does not apply because the existence of Debro's pension plan was made known to plaintiff more than six-years prior to the initiation of this action.

Concerning the documents allegedly concealed – SPD, NOIT, NOPB, and NOAC – plaintiff should have discovered, with reasonable diligence, the breach of fiduciary duties he claims. Indeed, the amended complaint clearly alleges that immediately after learning of the existence and termination of Debro's pension plan, plaintiff repeatedly attempted to discover how the amount of his benefits "had been calculated and [asked] for other information about this pension plan, including a request to see the Pension Benefit Plan itself as well as the latest

financial statements for the plan." (*Id*. ¶¶ 18–21.) Although Daniel may not have been forthcoming with these documents, plaintiff had other recourse such as contacting his mother, the sole owner of Debro, or the estate of his father, who was a trustee of Debro's pension plan prior to his death in 2004. (*Id*. ¶¶ 12, 15.) Thus, plaintiff's cause of action regarding these documents, which he repeatedly asked for and should have discovered with reasonable diligence in "early 2006," accrued more than six years before this action was filed. (*Id*. at ¶¶ 17–21); *Guilbert v. Gardner*, 480 F.3d 140, 147–48 (2d Cir. 2007) (finding that despite plaintiff's claim to not "have seen any documentation of his pension plan," "plaintiff reasonably could have discovered the fraud sometime before" the statute of limitations ran where the "dearth of documents alone should have suggested to him that something was awry" and the fact that "each of plaintiff's repeated requests for documentary evidence of the plan was fruitless . . . should [also] have raised suspicion").

Likewise, plaintiff's allegations that Daniel hid the fact that Debro's plan was voluntarily terminated or that his "ostensible share of pension benefits dwarfed that of all the other participants" fall short. (Doc. No. 17 at 10.) Plaintiff offers no duty upon which Daniel is required to disclose to plaintiff that the pension plan was voluntarily terminated or the fact that his share of pension benefits was larger than other participants. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*, 85 F. Supp. 2d 282, 296 (S.D.N.Y. 2000) (noting that "plaintiff must allege facts giving rise to a duty to disclose" in order to allege concealment). Nonetheless, even if Daniel did have a duty to disclose, plaintiff's claims would still fail.

Indeed, plaintiff should have discovered with reasonable diligence in "early 2006," along with the documents above – which are required to be sent to plan participants in the case of a voluntary termination of the pension plan and would have indicated that the pension plan was

being voluntarily terminated – the fact that Debro's pension plan was voluntarily terminated. (Doc. No. 3 ¶¶ 36–38.)  Therefore, plaintiff's allegation here is insufficient to invoke the concealment exception to ERISA's statute of limitations.

Similarly, although plaintiff alleges that Daniel received $812,612.00, plaintiff merely states in conclusory fashion that this distribution "defrauded [plaintiff] and breached his fiduciary duties to [plaintiff]."  (Doc. No. 3 ¶¶ 23, 60.)  Plaintiff does not allege how or why the amount Daniel received constitutes fraud or a breach of fiduciary duties with respect to plaintiff. Instead, plaintiff asks "the Court to *infer* that the reason Dan[iel]" concealed this information was to prevent plaintiff from "imped[ing] or delay[ing] Dan[iel]'s plan to immediate close Debro . . . so that Dan[iel] could improperly enrich himself by raiding the pension plan at (in relevant part) [plaintiff]'s expense."  (Doc. No. 17 at 15 (emphasis added).)  However, plaintiff's factual allegations do not support this inference.  Rather, the amended complaint alleges that Daniel informed plaintiff that Debro was going out of business more than one year before Debro's pension plan assets were distributed ((Doc. No. 3 ¶¶ 17–18), and Debro was actually closed (*id*. ¶ 22), plenty of time for plaintiff to "impede or delay" Debro's closing.  Furthermore, even if the Court were to accept plaintiff's inference, which it does not, plaintiff clearly states that he has not been harmed.  Rather, plaintiff argues that Daniel "defrauded Debro" and any "loss to Debro would eventually accrue to [plaintiff] . . . as a third party beneficiary" since "as one of his mother's children [plaintiff] is a beneficiary under his mother's will."  (Doc. No. 17 at 15–16.) Therefore, not only does plaintiff's claim concerning the size of Daniel's pension plan payout fail to invoke the concealment exception to ERISA's statute of limitations, plaintiff, as a potential beneficiary to his mother's will, does not have legal right or standing to assert such a claim in the first place.

Accordingly, plaintiff fails to plausibly state a claim for relief for breach of fiduciary duties against Daniel for failing to provide copies of the SPD, NOIT, NOPB, and NOAC; improperly segregating Debro's pension plan assets; and failing to account for Debro's pension plan assets.

### ii. Non-Fiduciary Claims – Statute Of Limitations C.P.L.R. § 213

Plaintiff's claims that Daniel violated 29 U.S.C. § 1054(b) by improperly segregating pension fund assets, and violated 29 U.S.C. § 1132(a)(1)(B) by failing to provide plaintiff with the full amount of pension benefits owed, are governed by the six-year statute of limitations under C.P.L.R. § 213. The statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the litigation. *Bilello*, 607 F. Supp. 2d at 592. Courts generally hold that "a cause of action under ERISA accrues upon a clear repudiation that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." *Carey*, 201 F.3d at 49.

Daniel does not address these claims specifically but merely argues that all the claims asserted by plaintiff took place more than six years prior to the commencement of the instant litigation. (*See* Doc. No. 16-1 at 6–10.) Plaintiff does not make any arguments concerning the timeliness of these two claims. The Court finds them untimely.

### 1. Improper Segregation Of Pension Plan Assets

Plaintiff alleges that "[a]t some point, Dan[iel] segregated certain assets under the Plan for the Plan's older participants" and that "[b]y segregating these Plan assets, Dan[iel] violated 29 U.S.C. § 1054(b)." (Doc. No. 3 ¶¶ 56–58.) Undoubtedly, this segregation must have taken place prior to the termination of Debro's pension plan and the distribution of its assets in "early

2006." (*Id.* ¶ 18.)  Because this claim accrued more than six years prior to the filing of this action, it is barred by C.P.L.R. § 213.[8]

### 2. *Failure To Provide Full Pension Benefit*

Plaintiff does not allege that he was denied benefits; rather, plaintiff claims that despite receiving "a check for about $20,000.00" in benefits, he was underpaid, and as such, Daniel violated 29 U.S.C. § 1132(a)(1)(B).  (Doc. No. 3 ¶ 68.)  The Second Circuit recently held that "the statute of limitations will start to run [ ] when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation" of the benefits he has received.  *Novella v. Westchester County*, 661 F.3d 128, 147 (2d Cir. 2011).  The statute of limitations for plaintiff's claim began to run in "early 2006" when, after receiving a check representing his pension benefits, plaintiff specifically inquired "how this $20,000.00 had been calculated" and asked for "other information about this pension plan, including a request to see the Pension Benefit Plan itself as well as the latest financial statements for the plan."  (Doc. No. 3 ¶ 19.)  Not getting satisfactory answers, plaintiff sought information from his Aunt Mary, a Debro employee, and "repeatedly ask[ed] Dan[iel] for further information."  (*Id.* ¶¶ 19–21.) Plaintiff, by repeatedly seeking out more information concerning the pension plan and how his benefits were calculated, clearly thought that the $20,000 check he received was not the full amount of his benefits and with due diligence should have discovered the injury that is the basis of this claim in "early 2006."  Thus, because this action was not filed within the six-year statute

---

[8] Even if plaintiff's claim were not time-barred, plaintiff has failed to plausibly state a claim upon which relief may be granted.  Plaintiff has not cited to, nor has this Court found, any section of this statute or court decision that would support plaintiff's claim that a trustee who segregates pension plan assets "for the Plan's older participants" violates 29 U.S.C. § 1054(b).  As a defined benefit plan, Debro's pension plan is governed by the three minimum accrual standards under 29 U.S.C. § 1054(b)(1).  A pension plan may violate this section if it were to reduce the benefit accrual of an employee because of that employee's attainment of any age, 29 U.S.C. § 1054(b)(1)(H), or if it were to decrease a participant's "accrued benefit on account of any increase in his age or service."  29 U.S.C. § 1054(b)(1)(G).  Plaintiff does not allege any reduction to his benefit accrual, however, and therefore has failed to state a claim for relief under these provisions.

of limitations, plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) against Daniel for failing to provide plaintiff with the full amount of pension benefits owed is time-barred and fails to plausibly state a claim upon which relief may be granted.

### D.  Failure To Plausibly State A Claim For Relief For Breach Of Contract

In addition to his ERISA claims, plaintiff alleges that Daniel breached the August 7, 2003 employment agreement, under which Daniel was paid $28,571.43 per year to "act as an Executive within Debro" on a part-time basis (Doc. No. 3 ¶ 11), by failing to "conduct, operate, manage, and use his utmost endeavor to promote the business of the employer." (*Id*. ¶ 74.)  In particular, plaintiff alleges that Daniel breached the employment agreement by "auction[ing] off Debro's equipment . . . for an infinitesimal fraction of their market value," "auction[ing] off Debro's furniture and other physical personalty, at a fraction of their market value," selling "Debro's building as well as the land upon which it stood for less than market value," "voluntarily terminat[ing] the Debro Pension Plan," and "voluntarily dissolve[ing] Debro and caus[ing] Debro to cease doing business in 2006" thereby "wast[ing], improperly dissipate[ing], and/or wrongfully convert[ing] Debro's corporate assets." (*Id*. ¶¶ 75–81.)

Plaintiff goes on to allege that he "was a third party beneficiary" to this employment agreement because the "[a]greement was created so that, upon Jo[seph]'s permanent disability (and, sadly, death) the business of Debro would seamlessly continue until such time as [plaintiff] (and, perhaps Jo[seph]'s older son, Joseph Jr.) was prepared and fully trained to maintain it" (*id*. ¶ 72), and that as a consequence of Daniel's breach of the employment contract, plaintiff was damaged in the amount of two million dollars.  (Doc. No. 3 at 14.)

Plaintiff does not state what law governs the employment agreement.  However, because Debro and Daniel are residents of the state of New York, the Court will apply New York law for

purposes of this motion to dismiss.[9]  (*See* Doc. No. 3 ¶¶ 2–3.)  Under New York law, in order to establish a breach of contract, plaintiff must allege "(1) the existence of a contract between [him]self and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach."  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  Moreover, "[u]nder New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party."  *Subaru Dist. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005); *see also Zahler v. Empire Merchants, LLC*, 11-cv-3163, 2012 WL 273698, at *7 (E.D.N.Y. Jan. 31, 2012) ("Under New York law, only an intended beneficiary of a contract may assert a claim as a third-party beneficiary.  A third party is an intended beneficiary where either (1) no one other than the third party can recover if the promisor breaches the contract or (2) the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." (citation omitted)).

Daniel argues in his motion to dismiss that plaintiff has not established "that a contract existed" and that "the purported contract is an <u>unsigned</u>, <u>undated</u> document that is obviously in <u>draft</u> form, <u>commencing in 2001</u>" instead of 2003 as claimed by plaintiff.  (Doc. No. 16-1 at 12–13 (emphasis in original).)  While plaintiff has not alleged a valid contract between himself and Daniel, plaintiff does allege, and the Court must take as true at the motion to dismiss stage, that Debro and Daniel entered into a seven-year employment contract on August 7, 2003, which required Daniel to "conduct, operate, manage, and use his utmost endeavor to promote the business of the employer."  (*Id.* ¶¶ 11, 74.)

---

[9] The August 7, 2003 Agreement of Sale, which was alleged to have been executed by Joseph and Daniel on the same day as the employment contract, is also governed by New York law.  (*See* Doc. No. 16-2, Ex. A.)

Nevertheless, taking as true the allegations in the amended complaint, plaintiff has failed to plausibly allege that he is a third-party beneficiary to this employment contract. Plaintiff alleges that the employment agreement was created so that Debro would pass from Joseph to plaintiff, "and, perhaps Jo[seph]'s older son, Joseph Jr.," but this allegation is insufficient to establish that plaintiff is a third-party beneficiary to the employment agreement. (*See* Doc. No. 3 ¶ 72.) Plaintiff has not alleged any contract language evidencing an intent to permit enforcement by plaintiff, nor has plaintiff alleged that "no one other than the [plaintiff] can recover if the promisor breaches the contract." *Zahler*, 2012 WL 273698, at *7. Accordingly, plaintiff fails to plausibly plead that he is an intended third-party beneficiary to the employment contract and therefore fails to plausibly state a claim for breach of contract.

## III. Other Arguments

As plaintiff has no remaining claims, the Court need not address Daniel's alternative grounds for his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), and it also need not address Daniel and PDS's arguments to waive the application of ERISA penalties.

## IV. Sanctions

In his motion to dismiss, Daniel invites this Court to "consider *sua sponte* imposition of sanctions pursuant to Rule 11" because plaintiff "has acted in bad faith" by "deliberately omit[ing] critical facts, and mak[ing] assertions of purported facts that were either known to be false or could have been determined to be false with a minimum of inquiry." (Doc. No. 16-1 at 21.) Specifically, Daniel contends that "it was objectively unreasonable for Plaintiff (a) to assert breach of contract where no contract existed, (b) to assert no knowledge of pension rights until May of 2006 when documentary evidence demonstrates earlier knowledge and receipt of benefits, (c) to conceal his status as director of Debro, his purchase of real estate in collusion

with his mother who was the sole owner of the company and its assets that he then claimed was sold at a fraction of its value, among the myriad of other omissions and false statements." (*Id*. at 21–23.)

Plaintiff made no response in his opposition papers.

Rule 11 permits a court to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). However, after a party is no longer able to withdraw or amend its challenged pleading, a court may not impose sanctions absent a finding of bad faith. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003). If a court were to determine that a sanction should be imposed *sua sponte* pursuant to Rule 11, such a sanction would be limited to "nonmonetary directives" or "an order to pay a penalty into court." Fed. R. Civ. P. 11(c)(4); *see Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94–95 (2d Cir. 1999).

Although the Court finds Daniel's contentions to be troubling, the Court declines to ask plaintiff to respond to Daniel's allegations at this time. Daniel, fully aware of these allegations of bad faith well in advance of making his motion to dismiss, could have moved for sanctions under Rule 11(c)(2) after giving plaintiff twenty-one days to withdraw his amended complaint, but chose not to. Likewise, because plaintiff has no remaining claims, the Court declines to *sua sponte* invoke Rule 11 at this juncture.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss are GRANTED, and the amended complaint is DISMISSED in its entirety. The Clerk of the Court is directed to enter judgment in favor of PDS and Daniel DePasquale, and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
   February 28, 2013

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge